# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| TIMOTHY MITCHELL B.,[1] <br><br> Plaintiff, <br><br> v. <br><br> KILOLO KIJAKZI, <br> Acting Commissioner of Social Security,[2] <br><br> Defendant. | Case No. 5:20-cv-01520-AFM <br><br> **MEMORANDUM OPINION AND ORDER REVERSING AND REMANDING DECISION OF THE COMMISSIONER** |

Plaintiff filed this action seeking review of the Commissioner's final decision denying his application for supplemental security income. In accordance with the Court's case management order, the parties have filed briefs addressing the merits of the disputed issues. The matter is now ready for decision.

---

[1] Plaintiff's name has been partially redacted in accordance with Federal Rule of Civil Procedure 5.2(c)(2)(B) and the recommendation of the Committee on Court Administration and Case Management of the Judicial Conference of the United States.

[2] Kilolo Kijakazi became the Acting Commissioner of Social Security on July 9, 2021. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Kilolo Kijakazi should be substituted, therefore, for Andrew Saul as the defendant in this suit. No further action need be taken to continue this suit by reason of the last sentence of section 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

## DISPUTED ISSUES

1. Whether the ALJ properly considered the medical evidence and medical opinions.
2. Whether the ALJ properly considered Plaintiff's subjective statements.

## STANDARD OF REVIEW

Under 42 U.S.C. § 405(g), this Court only reverses the Commissioner's decision if its findings are based on legal error or are not supported by substantial evidence. *See Molina v. Astrue*, 674 F.3d 1104, 1110 (9th Cir. 2012), *superseded by regulation on other ground as recognized in, Sweets v. Kijakazi*, 2021 WL 3485934, at *1 (9th Cir. Aug. 9, 2021). As the Supreme Court has stated, "whatever the meaning of 'substantial' in other contexts, the threshold for such evidentiary sufficiency is not high." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019). Substantial evidence is "more than a scintilla, but less than a preponderance." *Reddick v. Chater*, 157 F.3d 715, 720 (9th Cir. 1998). Where the evidence is susceptible to more than one rationale interpretation, one of which supports the ALJ's decision, the ALJ's conclusion must be upheld. *See Thomas v. Barnhart,* 278 F.3d 947, 954 (9th Cir. 2002). As such, this Court may not substitute its judgment for that of the Commissioner. *See Jamerson v. Chater*, 112 F.3d 1064, 1065 (9th Cir. 1997). Even when the ALJ commits legal error, the decision will be upheld where that error is harmless. *Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1099 (9th Cir. 2014). An error is harmless if it is inconsequential to the ultimate nondisability determination. *Id.*

## BACKGROUND

On May 19, 2017, Plaintiff filed an application for Supplemental Security Income, alleging disability beginning January 1, 1999. (Administrative Record ("AR") 164.) His application was denied initially and upon reconsideration. (AR 84,

92.) A video hearing was held before an Administrative Law Judge ("ALJ") on September 13, 2019. (AR 31.) Plaintiff (represented by an attorney) and a vocational expert ("VE") testified at the hearing. (AR 33-48.)

On October 29, 2019, the ALJ issued an unfavorable decision. The ALJ summarized the relevant medical record, finding that Plaintiff's seizure disorder and mental impairment significantly limited his ability to perform basic work activities. (AR 17.) The ALJ found Plaintiff had seizure disorder and examined a progress note report from Riverside University Health System that documented a seizure episode in March 2018 at a provider's office. (AR 21; *citing* AR 991.) Treatment records from December 28, 2017 and February 20, 2018 reflect ER visits and hospital treatments for Plaintiff's seizure. (AR 21; *citing* AR 730, 979.) The ALJ noted that while incarcerated, Plaintiff had a breakthrough seizure on February 11, 2017, which resulted in facial trauma. (AR 21; *citing* AR 555.) An x-ray revealed a non-displaced nasal blow fracture from the fall. (AR 555.) Plaintiff was prescribed a soft-foam seizure helmet after the incident. (AR 21; *citing* AR 494.) Plaintiff reported better seizure control on February 17, 2017 after his medications were increased. (AR 21; *citing* AR 555.)

The ALJ stated that the medical records reported less frequent seizures than alleged by Plaintiff. The ALJ references a psychiatric assessment from October 11, 2018, which states that Plaintiff had two seizures over the last 10 days and a progress note report from the same date which states that Plaintiff reported having a seizure two weeks ago. (AR 21; *citing* AR 836, 1029.) The ALJ also reviewed a treatment note indicating between October 2018 to March 2019, Plaintiff had not gone in for treatment and was reported to have relapsed on methamphetamines, at which time he also stopped taking his regular medications and was having more frequent seizures. (AR 21; *citing* AR 759.) Plaintiff reported he had not had another seizure since beginning his current regimen. *Id.*

The ALJ also found that treatment records showed Plaintiff's use of ambulatory devices including a cane on February 23, 2018 and later a walker around March 2018. (AR 21; *citing* AR 741, 994.) Plaintiff used these devices for his unsteady gait.

When considering his mental impairments, the ALJ addressed notes documenting Plaintiff reporting auditory and visual hallucinations occurring multiple times per day. (AR 21; *citing* AR 624.) The ALJ found this to be especially noted in an assessment from September 2017, during which time Plaintiff reported he stopped taking his psychiatric medication while in prison and was now requesting to restart them. (AR 21; *citing* AR 625.) Plaintiff later reported on November 28, 2017, that he was doing much better on his medications but was still hearing voices, though they were not as bad. (AR 21; *citing* AR 932.) The ALJ also noted that Plaintiff reported having difficulty in trying to restart his life without depending on crime and observed that Plaintiff has a lengthy history of substance abuse and crime. (AR 21; *citing* AR 624, 844.)

The ALJ found the opinion of consultative examiner, Robert A. Moore, M.D., to be somewhat persuasive. Dr. Moore conducted a neurological evaluation of Plaintiff on December 18, 2017. (AR 22; *citing* AR 703.) Dr. Moore found Plaintiff was alert and oriented to person, place, and time; was able to recall three objects after a five-minute period; was able to perform simple calculations; and was able to follow three-step commands. (AR 704.) Dr. Moore found Plaintiff could perform rapid alternating movements in his upper and lower extremities, and a finger-nose-finger and heel-shin test did not reveal any dysmetria or transverse tremor. (AR 705.) Plaintiff walked slightly slowly on a narrow base and did not attempt to walk on his heels and toes. (AR 705.) Plaintiff had normal tone in the upper and lower extremities. (AR 705.) Though Dr. Moore's seizure precautions were persuasive, the ALJ concluded that Dr. Moore did not include enough mental limitations in Plaintiff's assessment. (AR 22.)

The ALJ found the opinion of state agency psychological consultant, Tim Schumacher, Ph.D., to be persuasive. (AR 22.) Dr. Schumacher opined that Plaintiff's ability to understand and remember job instructions was not significantly limited, and he could complete one- and two-step assignments for up to two-hour intervals during a regular workday and workweek. (AR 58.) Dr. Schumacher found that Plaintiff could engage in routine contacts with coworkers, and brief reminders would be needed to follow through on work assignment changes. (AR 58-59.) The ALJ determined that Dr. Schumacher's opinion was supported by the overall record, including Plaintiff's daily activities and the findings that Plaintiff shows some improvement with treatment and compliance. (AR 22.) This was also consistent with the medical findings of Dr. Moore. *Id.*

The ALJ also found the opinion of state agency psychological consultant, Janet Anguas-Keiter, Psy.D., to be persuasive. (AR 22.) Dr. Anguas-Keiter's reevaluation concurred with Dr. Schumacher's report and noted that overall Plaintiff can complete simple, routine, and repetitive tasks in a socially limited setting. (AR 72.) The ALJ found Dr. Anguas-Keiter's opinion was supported by the overall medical evidence and consistent with Dr. Moore's medical findings. (AR 22.)

The ALJ gave great weight to the physical limitations included in opinions of state agency medical consultants, Q. Nguyen, M.D., and Brian Harper, M.D. (AR 23.) The ALJ found Dr. Nguyen's and Dr. Harper's statements recommending Plaintiff could not climb ladders, ropes or scaffolds and must avoid all exposures to hazards were supported by the record as a whole, which reflected continued treatment for seizure disorder. *Id.* The opinions were also consistent with the findings of Dr. Moore who found normal tone in Plaintiff's upper and lower extremities with no evidence of dysmetria or transverse tremor. *Id.*

The ALJ found the opinion of one of Plaintiff's treating physicians to be unpersuasive because his statements were inconsistent in his own records. (AR 23.) Plaintiff's physician, Scott Weingold, M.D., stated that Plaintiff gets nervous and

fearful when trying to learn new things because he knows he has a significant problem learning new multi-step instructions and that, if Plaintiff were to attempt gainful competitive employment, he would quickly become anxious which would increase his hallucinations to the point that he could not distinguish reality from psychosis. (AR 23; *citing* AR 623.) Dr. Weingold later notes that Plaintiff can grasp concepts quite quickly and is able to manipulate ideas, even those that are distressing to him. (AR 23; *citing* AR 634.) The ALJ found this level of impairment is not supported in the record which documents mostly conservative treatment and some improvement with compliance. (AR 23.) The ALJ did not discuss the opinion of another treating physician, Dr. Anicia Jimenez Policar.

The ALJ found that Plaintiff suffered from the following severe impairments: seizure disorder and mental impairment variously diagnosed to include depression. (AR 17.) The ALJ did not find Plaintiff's mental impairment of substance abuse to be severe. (AR 18.) The ALJ then determined that Plaintiff had the residual functional capacity ("RFC") to perform a full range of work at all exertional levels but with the following non-exertional limitations: Plaintiff should never climb ladders, ropes or scaffolds but can occasionally balance with the use of a hand-held assistive device for ambulation. He must avoid all exposure to operational control of moving machinery, unprotected heights, and hazardous machinery. Plaintiff can understand, carry out and remember simple instructions, make commensurate work-related decisions, and respond appropriately to supervision, coworkers, and work situations. Plaintiff can deal with routine changes in work setting, maintain concentration, persistence and pace for up to and including two hours at a time with normal breaks throughout a normal workday. Plaintiff is suitable for jobs requiring no interaction with the public and can be around coworkers throughout the day but should be required to have only occasional interaction with them. (AR 20.)

Relying on the VE's testimony, the ALJ determined that Plaintiff was unable to perform his past relevant work as a Construction Worker or a Carpenter but found

that Plaintiff could work as a Mail Clerk or a Router. (AR 25.) Accordingly, the ALJ determined that Plaintiff was not disabled since May 19, 2017, the date the application was filed. (AR 25.) The Appeals Council denied review (AR 1-5), thereby rendering the ALJ's decision the final decision of the Commissioner.

## DISCUSSION

**1.    Whether the ALJ properly considered the medical evidence and medical opinions.**

<u>Relevant Medical Evidence</u>

Plaintiff contends that the ALJ failed to properly consider all the relevant medical evidence when assessing his RFC. (ECF 22 at 3.) Plaintiff points to findings in the medical record that the ALJ did not mention in his assessment, including his trigger finger on his dominant right hand, his neuropathy in his lower extremities, and his limited mobility in his left knee.

On September 27, 2017, Plaintiff complained about an unsteady gait and right-hand pain and requested a cane. Plaintiff's ambulatory issues were referred for physical therapy. (AR 724.) On December 29, 2017, Plaintiff was referred to a neurologist for his bilateral lower extremities, which consisted of numbness on the entire bottom of his left foot and right toes. Plaintiff also complained about knee pain at this time. (AR 828.) Plaintiff again complained about worsening muscle spasms in his hand on February 8, 2018, which made it difficult for him to open his fingers. It was noted by the examining physician that Plaintiff's right fingers were unable to voluntarily abduct from his palm and could only be un-pried with difficulty due to their contraction. The physician did not see evidence of trigger finger at the time but sent in a referral to confirm. (AR 736.) On February 23, 2018, Plaintiff continued to complain about an unsteady gait and was noted to still use his cane for ambulation. At this time, Plaintiff put in a request for a walker with wheels and brakes. (AR 741.) By March 23, 2018, Plaintiff was noted to have unspecified trigger finger. (AR 745.)

On May 14, 2018, Plaintiff was still complaining about his right hand sticking and locking on the last three fingers and was given an ambulatory referral to orthopedic surgery. (AR 747-748.) On June 11, 2018, Plaintiff was given a wrist support for his trigger finger and was redirected to an orthopedist. (AR 751-752.) On September 13, 2018, Plaintiff was noted to have very limited gait with his cane and could not get up on the exam table easily due to his knee brace on his left leg which limited his extension and flexion. (AR 754.)

When determining a claimant's RFC, the Commissioner will look at all the relevant evidence in the claimant's case record. 20 C.F.R. § 404.1545(e); *see also Laborin v. Berryhill*, 867 F.3d 1151, 1153 (9th Cir. 2017). However, an ALJ is not required to discuss every piece of evidence in the record. *See Hiler v. Astrue*, 687 F.3d 1208, 1212 (9th Cir. 2012) ("[t]he ALJ is not required to discuss evidence that is neither significant nor probative."). For the following reasons, the ALJ did not err in failing to discuss the evidence Plaintiff identifies.

With respect to Plaintiff's neuropathy and limited mobility, the ALJ considered treatment records on February 23, 2018 and March 15, 2018, which noted that Plaintiff used a cane and later a walker for his unsteady gait. (AR 21, *citing* AR 741, 994.) The ALJ also referred to Plaintiff's testimony during the hearing in which he stated that he had neuropathy throughout his whole body, used a four-wheel walker, and was wearing a knee brace. (AR 20, *see* AR 35, 43.) Furthermore, the ALJ specifically required use of an assistive device for ambulation in the RFC hypothetical to the VE. (AR 46.) Plaintiff's counsel did not contest the limitations presented by the ALJ to the VE during the hearing, and counsel did not add any limitations for the VE to consider. (AR 47-48.) In general, Plaintiff is responsible for providing evidence that the ALJ will use when determining his RFC. *See* 20 C.F.R. § 404.1545(a)(3). In his initial application and upon reconsideration, Plaintiff failed to assert disability based on neuropathy. (*See* AR 196, 50, 64.) Only now in his brief to this Court does Plaintiff contend that these impairments would make it difficult to

stand and walk for 6 out of an 8-hour workday as required for both occupations identified by the VE. (ECF 22 at 13-14.) However, none of the records that Plaintiff cites assesses any limitations due to his diagnosis of neuropathy, and the mere existence of an impairment is not sufficient proof of a disability. *Matthews v. Shalala*, 10 F.3d 678, 680 (9th Cir. 1993).

As to Plaintiff's trigger finger argument, the ALJ noted that Plaintiff wore a wrist brace during the administrative hearing. (AR 20, *see* AR 35.) Though the ALJ does not mention Plaintiff's trigger finger in the written decision, Plaintiff did not bring the impairment to the ALJ's attention at any point during the hearing, despite having ample opportunity to do so. (*See* AR 43, 44, 46, 47, 48.) The ALJ has an obligation to take reasonable steps to ensure the issues and questions raised by medical evidence are addressed so that the disability determination is fairly made on a sufficient record of information. *See Tidwell v. Apfel*, 161 F.3d 599, 602 (9th Cir. 1999). When represented by counsel, a claimant must raise all issues and evidence at the administrative hearings to preserve them on appeal. *See Meanel v. Apfel*, 172 F.3d 1111, 1115 (9th Cir. 1999). Plaintiff's counsel did not raise this issue with the ALJ during the administrative hearing and did not raise these issues to the Appeal Council. (AR 33-48; 163.) Additionally, there is no other mention of the trigger finger diagnosis after June 11, 2018. (AR 751-752.) Again, the mere existence of an impairment is not sufficient proof of a disability. *Matthews*, 10 F.3d at 680. Because Plaintiff did not bring this evidence to the ALJ's attention initially and the Plaintiff does not point to any evidence showing how this would result in a functional limitation, the ALJ did not err in not discussing it in the written decision or including it in Plaintiff's RFC.

<u>Treating Physician Opinions</u>

The current regulations provide that for claims filed on or after March 27, 2017, the Commissioner will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinions or prior administrative medical

findings, including those from [Plaintiff's] medical sources. 20 C.F.R. § 416.920c(a). Because Plaintiff's claim was filed on May 19, 2017, these regulations apply. Prior to the current regulations, Ninth Circuit law held that an ALJ must provide clear and convincing reasons to reject a treating physician's uncontradicted opinion and must provide specific and legitimate reasons to reject a treating physician's contradicted opinion. *See Trevizo v. Berryhill*, 871 F.3d 664, 675 (9th Cir. 2017). Some district courts have continued to apply the "specific and legitimate" standard as a "benchmark against which the Court evaluates [the ALJ's] reasoning." *See, e.g.*, *Kathleen G. v. Comm'r of Soc. Sec.*, 2020 WL 6581012, at *3 (W.D. Wash. Nov. 10, 2020). It remains to be seen whether the new regulations will meaningfully change how the Ninth Circuit evaluates the adequacy of an ALJ's reasoning and whether the Ninth Circuit will continue to require that an ALJ provide "clear and convincing" or "specific and legitimate reasons" in the analysis of medical opinions. *Joseph Perry B. v. Saul*, 2021 WL 1179277, at *3 (C.D. Cal. Mar. 29, 2021) (quoting *Patricia F. v. Saul*, 2020 WL 1812233, at *3 (W.D. Wash. Apr. 9, 2020)). Nonetheless, the Court is mindful that it must defer to the new regulations, even when they conflict with judicial precedent. *See Agans v. Saul*, 2021 WL 1388610, at *7 (E.D. Cal. Apr. 13, 2021).

### *Dr. Weingold*

Plaintiff contends that the ALJ failed to properly consider and give appropriate weight to the opinion of treating psychiatrist Scott Weingold, M.D. (ECF 22 at 11.) The ALJ rejected Dr. Weingold's opinion because it was inconsistent with his own records. In Dr. Weingold's reports, he states that Plaintiff could not attempt gainful competitive employment because normal supervisory feedback would increase his stress and cause him to hallucinate to the point of not being able to distinguish reality from psychosis. (AR 623.) However, as the ALJ noted, Dr. Weingold also expresses the opinion that Plaintiff is quite intelligent and can grasp concepts quite quickly and

is able to manipulate ideas, even those that are quite distressing to him. (AR 23; *citing* AR 634.)

Under the relevant regulations, an ALJ must determine how persuasive they find a medical opinion. 20 C.F.R. § 416.920c(b). Supportability and consistency are the most important factors when determining persuasiveness. 20 C.F.R. § 416.920c(b)(2). Based on inconsistencies in Dr. Weingold's statements about Plaintiff's ability to deal with stress, the ALJ found that Dr. Weingold's opinion to be unpersuasive. This was a "sufficient and legitimate" reason on which to reject Dr. Weingold's opinion. Plaintiff has not offered explanation or justification for the inconsistent statements, but rather argues that Dr. Weingold's opinion is supported by the record as a whole. (ECF 22 at 12.) Yet the ALJ also found that the level of impairment described by Dr. Weingold is not supported by the record — which includes mostly conservative treatment and some improvement with compliance. (AR 23.) The fact that Plaintiff can articulate an alternate interpretation of the facts does not mean that substantial evidence does not support the ALJ's decision. (ECF 27 at 7.) Where evidence is susceptible to more than one rational interpretation, the ALJ's conclusion must be upheld. *Burch v. Barnhart*, 400 F.3d 676, 681 (9th Cir. 2005). Because the ALJ gave a specific and legitimate reason for rejecting Dr. Weingold's opinion, that decision must be upheld.

### *Dr. Policar*

Dr. Anicia Jimenez Policar was also a treating psychiatrist for Plaintiff. (*See, e.g.*, AR 910-911, 1029-1030.) Plaintiff challenges the ALJ's failure to account for Dr. Policar's opinion. (ECF 22 at 11.) The ALJ did not reject or even discuss the opinion of Dr. Policar, and the Commissioner's brief to the Court does not mention Dr. Policar or her opinion. Dr. Policar opined, *inter alia*, that Plaintiff's schizoaffective disorder impaired his ability to complete job applications, perform interviews, and keep a job. (AR 911, 1030.) As such, her opinion is relevant to the issue of Plaintiff's alleged disability. An ALJ must consider all medical opinion

11

evidence. *See Tommasetti v. Astrue*, 533 F.3d 1035, 1041 (9th Cir. 2008). Regardless of the standard for review of physician opinions, the ALJ erred in this regard: The ALJ's decision failed to set out specific legitimate reasons to reject Dr. Policar's opinion and failed to consider any of the factors listed in 20 C.F.R. § 404.1520c(c)(1)-(5), including the most important factors of supportability and consistency. *See Beason v. Saul*, 2020 WL 606760, at *3 (C.D. Cal. Feb. 7, 2020) (citing *Joseph M.R. v. Comm'r of Soc. Sec.*, 2019 WL 4279027, at *8 (D. Or. Sept. 10, 2019) ("... [T]he ALJ did not reference [the examining physician's] examination and did not articulate if and how he applied those specific factors to determine how much weight to give [the examining physician's] opinion.... On this record the Court concludes the ALJ erred when he failed to consider [the examining physician's] opinion and failed to provide legally sufficient reasons supported by substantial evidence in the record for doing so.")).

Because Dr. Policar's opinion is relevant to the disability question and because the ALJ's decision did not consider any of the factors for evaluating the persuasiveness of Dr. Policar's opinion, the ALJ's error cannot be deemed "inconsequential to the ultimate nondisability determination." *See Stout v. Comm'r, Soc. Sec. Admin.*, 454 F.3d 1050, 1055 (9th Cir. 2006); *Carmickle v. Comm'r, Soc. Sec. Admin.*, 533 F.3d 1155, 1162 (9th Cir. 2008).

**2.      Whether the ALJ properly considered Plaintiff's subjective statements.**

Plaintiff reported that he was unable to work due to symptoms and limitations from his seizures, mental disorder, and stroke. (AR 20; *citing* AR 196.) Plaintiff testified at the administrative hearing that he has between 4-20 seizures a day despite consistently taking his seizure medication. (AR 20; *citing* AR 39-40.) Plaintiff also stated he has neuropathy throughout his whole body. (AR 44.)

The ALJ found that while Plaintiff's impairments could reasonably be expected to cause his alleged symptoms, Plaintiff's statements concerning the intensity, persistence, and limiting effects of these symptoms were not entirely

consistent with the medical evidence and other evidence in the record. (AR 21.) Plaintiff contends that the ALJ failed to provide clear and convincing reasons for discounting his statements. (ECF 22 at 18.) In response, the Commissioner contends that the ALJ properly assessed Plaintiff's statements. (ECF 27 at 9.)

Once a claimant has produced medical evidence of an underlying impairment, the Commissioner cannot discredit his testimony as to the severity of symptoms merely because they are unsupported by objective medical evidence. *Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998). If (as here) an ALJ does not specifically identify evidence of malingering, he must provide "clear and convincing" reasons to reject the claimant's subjective testimony by specifically identifying "what testimony is not credible and what evidence undermines the claimant's complaints." *Parra v. Astrue*, 481 F.3d 742, 750 (9th Cir. 2007) (quoting *Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1995)). Factors to consider when making such a determination include objective medical evidence, claimant's treatment history, claimant's daily activities, unexplained failure to pursue or follow treatment, and inconsistencies in testimony. *See Ghanim v. Colvin*, 763 F.3d 1154, 1163 (9th Cir. 2014). As discussed below, the Court concludes the ALJ gave reasons for discounting Plaintiff's subjective symptom testimony that were legally sufficient and supported by substantial evidence.

<u>Inconsistent Testimony</u>

In assessing a claimant's credibility, an ALJ may consider inconsistencies either in the claimant's testimony or between the testimony and the claimant's conduct. *See Fair v. Bowen*, 885 F.2d 597, 604 n.5 (9th Cir. 1989). Plaintiff reported having between four and twenty seizures per day. However, the ALJ found that, Plaintiff's use of a helmet, cane, or walker was minimally noted in the record, even though a higher frequency of use was expected given Plaintiff's claim of near-constant seizures. *Id.* In addition, the ALJ found that while Plaintiff claimed that he could not work due to his medical limitations, he had also stated that he had no ability to "get on [his] own two feet" other than by crime. (AR 21, 23.) By these instances,

the ALJ identified specific testimony of Plaintiff that he found inconsistent with the evidence in the record, and this provided a clear and convincing basis for discounting Plaintiff's subjective claims. *See Brown-Hunter v. Colvin*, 806 F.3d 487, 493 (9th Cir. 2015).

Criminal History

The ALJ also referred to Plaintiff's criminal history in his assessment of Plaintiff's subjective claims. (AR 21.) Recent felony convictions involving moral turpitude are a proper basis for an adverse credibility finding. *See Albidrez v. Astrue*, 504 F. Supp. 2d 814, 822 (C.D. Cal. 2007.); *Dowdy v. Astrue*, 2013 WL 395039, at *11 (C.D. Cal. Jan. 31, 2013) (an "extensive criminal history was also a clear and convincing reason supporting the ALJ's adverse credibility finding."). Here, Plaintiff reported recently serving two years for grand theft auto as part of a lengthy criminal history. (AR 21; *citing* AR 624, 844.) Grand theft auto is a crime of moral turpitude. *Castillo-Cruz v. Holder*, 581 F.3d 1154, 1160-61 (9th Cir. 2009). It was proper for the ALJ to consider Plaintiff's grand theft auto conviction as another basis for discounting his subjective claims. *See e.g.*, *Cockren v. Astrue*, 2010 WL 2791569, at *11 (E.D. Cal. July 14, 2010) ("His lack of forthright disclosure regarding these multiple convictions, as well as a history of criminal conviction for a crime of moral turpitude (grand theft [auto]) detracts from the claimant's credibility."); *Kral v. Astrue*, 2011 WL 4383111, at *7 (E.D. Cal. Sept. 20, 2011); *Holt v. Colvin,* 2015 WL 1275907, at *13 (E.D. Cal. Mar. 19, 2015); *Weirich v. Astrue*, 2010 WL 4736481, at *5 (C.D. Cal. Nov. 15, 2010).[3]

///

///

---

[3] Because the ALJ provided the "clear and convincing" reasons discussed above, the Court need not discuss other grounds set out in the decision for discounting Plaintiff's credibility because any error concerning those other grounds would be harmless. *See Treichler*, 775 F.3d at 1099 (An error is harmless if it is "inconsequential to the ultimate nondisability determination.").

**ORDER**

As a result of the ALJ's error in assessing the opinion of Dr. Policar, IT IS ORDERED that Judgment be entered reversing the decision of the Commissioner and remanding this action for further administrative proceedings consistent with this opinion. It is not the Court's intent to limit the scope of the remand.

DATED: 8/11/2021

_____
ALEXANDER F. MacKINNON
UNITED STATES MAGISTRATE JUDGE